UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | Criminal No. 23-cr-73-10 (CKK) |
| | : | |
| **MARCUS ORLANDO BROWN,** | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S
APPEAL OF ORDER OF DETENTION**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this Opposition to Defendant Marcus Brown's Appeal of Order of Detention, ECF No. 107. There is a rebuttable presumption that no conditions or combinations of conditions can effectively ensure the defendant's appearance in this case and otherwise protect the community, pursuant to 18 U.S.C. § 3142(e)(3)(A).

The government respectfully requests that the following points and authorities, as well as any other facts, arguments and authorities presented at the detention hearing, be considered in the Court's determination regarding pre-trial detention.

**APPLICABLE LAW**

Pursuant to 18 U.S.C. § 3142(e)(3)(A), there is a rebuttable presumption that no conditions or combinations of conditions can effectively ensure the defendant's appearance in this case and otherwise protect the community. The government must establish by clear and convincing evidence that a defendant is a danger to the community. *United States v. Peralta*, 849 F.2d 625, 626 (D.C. Cir. 1988)). For a detention decision based upon risk of flight, the government only need prove by a preponderance of the evidence that there are no conditions or combinations of conditions that will assure the defendant's appearance as required. *United States v. Vortis*, 785

F.2d 327, 328-29 (D.C. Cir. 1986). Furthermore, the government may present evidence by way of a proffer at a detention hearing. *United States v. Smith*, 79 F.3d 1208, 1209-10 (D.C. Cir. 1996).

In considering whether there are conditions of release, which will reasonably assure the safety of any other person and the community, and the appearance of the defendant as required, the Court should consider and weigh the following factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. *See* 18 U.S.C. § 3142(g). In consideration of these factors, along with the applicable rebuttable presumption, the government respectfully submits that there is no condition, or combination of conditions, that would assure the safety of the community or the defendants' appearance at future proceedings.

Meanwhile, 18 U.S.C. § 3145(b) states:

**(a) Review of a detention order**

If a person is ordered detained by a magistrate judge, or by a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court, the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order. The motion shall be determined promptly.

On the defendant's motion to review a release order, this Court considers *de novo* the Magistrate Judge's denial of pre-trial detention. In its discretion, the Court may proceed to rehear the evidence by recalling the witnesses, reviewing transcripts, or by proceeding through proffer and argument. It may take additional evidence from new witnesses or consider arguments not previously raised.

## BACKGROUND

On May 18, 2023, a federal grand jury returned a superseding indictment against defendant

Marcus Orlando Brown, among others, charging him with conspiracy to distribute more than 400 grams or more of a mixture and substance containing fentanyl (from January 2021 to the Present).

## I.     The Overdose Death

Sadly, this case begins with a death. On January 18, 2022, a three-count indictment was returned against defendants Larry and Justice Eastman, charging them with conspiracy to distribute fentanyl; distribution of fentanyl resulting in serious bodily injury; and distribution of fentanyl resulting in the death of a victim in Criminal Case 22-cr-022-CKK. The charges relate to the November 2020 overdose resulting in serious bodily injury and April 2021 overdose death of a female victim due to fentanyl toxicity. Both Larry and Justice Eastman have been sentenced.

## II.    The Broader Conspiracy

On March 9, 2023, a federal grand jury returned an indictment against defendants Craig Eastman (younger sibling to both Larry and Justice Eastman), Charles Taylor, and Hector Valdez in case 23-cr-73 (CCK).  Evidence uncovered during the investigation of Larry and Justice Eastman indicated that Craig Eastman and his associate Charles Taylor were flying out to Los Angeles to acquire fentanyl-laced pills from their Los-Angeles-based supplier, Valdez.  By March 22, 2023, Craig, Taylor, and Valdez were all in custody.  All three are detained pending trial.

On April 6, 2023, the indictment was superseded to include, among others, Raymond Nava Jr. and Max Carias Torres.  Both Torres and Nava are California-based upstream suppliers to Valdez.  On April 26, 2023, both Torres and Nava were arrested in Los Angeles and are also detained pending trial.

## III.   Brown and the Second Superseding Indictment

A second superseding indictment was returned on May 18, 2023, for, among others, the Defendant, Marcus Orlando Brown.  The Defendant's role in the conspiracy is that he is a D.C.-

based distributor of fentanyl-laced pills who was acquiring his supply from Valdez in Los Angeles. The evidence against the defendant includes a considerable number of communications between him and Valdez, thanks to Valdez's phones being seized and searched after Valdez's arrest.  In many of these conversations, the defendant has explicit conversations with Valdez about acquiring thousands of fentanyl-laced pills.  For example, in the conversation below, Valdez (in green) and the Defendant (in blue) discuss the price of 40 cents per pill, and the defendant reminds Valdez to prepare "2 boats" which is 2,000 pills (a "boat" refers to a thousand pills).





Indeed, there are even communications from the Defendant (in gray) to Valdez about the quality of the pills and how they are different colors, suggesting that the defendant knew these pills were fake but still insisted on acquiring thousands of them for distribution.



Beyond the quality of pills, the Defendant also made clear in Instagram direct messages with Valdez (lilcurl.b) that he intended to negotiate a lower price per pill (ticket) because the Defendant intended to buy large quantities (endless racks) of pills from Valdez.

```
Author  lilcurl.b (Instagram: 50311716672)
  Sent  2022-06-17 02:08:38 UTC
  Body  That's crazy pops

Author  moneymarz21 (Instagram: 7931646954)
  Sent  2022-06-17 20:09:45 UTC
  Body  Need a better ticket than everybody else bouta spend endless
        racks bro

Author  lilcurl.b (Instagram: 50311716672)
  Sent  2022-06-17 20:11:16 UTC
  Body  I got you

Author  lilcurl.b (Instagram: 50311716672)
  Sent  2022-06-17 20:11:22 UTC
  Body  My boy you know I do 

Author  lilcurl.b (Instagram: 50311716672)
  Sent  2022-09-13 18:38:06 UTC
  Body  Pops

Author  lilcurl.b (Instagram: 50311716672)
  Sent  2022-09-13 18:38:17 UTC
  Body  When you sending Wayne out here
```

On May 23, 2023, Brown and an associate flew from DCA to LAX. Law enforcement was able to locate Brown's vehicle at the DCA parking garage.[1] Based on Brown's prior history, law enforcement believed that Brown may have traveled to Los Angeles to acquire more controlled substances. On May 26, 2023, Brown booked a redeye flight from DCA to BWI. The next day, agents arrested both Brown and his associate at BWI.

Brown had on a backpack and permitted agents to inspect the contents. No narcotics were visible in the backpack, but it contained stacks upon stacks of what appeared to be mylar packaging that could be used to store illicit substances.

---

[1] After authorities located Brown's vehicle at the DCA parking garage, a K9 drug dog gave a positive indication on the vehicle. A search warrant was then executed on the vehicle, but no narcotics were recovered from within the vehicle. Nonetheless, the positive indication by the K9 indicates that Brown previously may have used his vehicle to transport illegal narcotics, causing the K9 to give a positive indication.



Brown's associate had a luggage bag that was tagged in his name. A search of that bag ultimately revealed that it contained 26 heat-sealed bags containing over 12 kilograms (27 pounds) of green leafy substance, believed to be marijuana.





Additionally on June 1, 2023, investigators executed a premises search warrant at 3545 Stanton Road Southeast Washington, D.C. 20020, which was the address Brown was believed to have left from to go to the airport.  Inside of that location, was the female leaseholder, her two minor children, Earl Isaac, who was arrested, and the following items:

- .40 caliber, Glock 22 firearm, affixed with a suspected machine gun conversion device ("MGCD") located under the bathroom sink.

- Over 100 small, round, blue pills inscribed with "M30" were located throughout the premises. Specifically, six pills were located in the front right coin pocket of Isaac's jeans, which initially were in the master bedroom before he put on the jeans to leave the premises after his arrest; three pills were located in Isaac's backpack, which was also located in the master bedroom; one pill located on the floor of the master bedroom; and numerous blue pills were located on the kitchen counter;



- Approximately $2,020.00 located in the front left pocket of Isaac's jeans;

- Approximately 2,680.00 grams of suspected marijuana located in common areas of the premises.



A custodial interview was later conducted with Isaac. He waived his Miranda rights and communicated with investigators. Among other things, he stated that the Glock firearm, the pills recovered in his pants pocket and backpack, and the approximate $2020.00. were his. He denied ownership, however, of the remaining pills and the marijuana, and claimed to the effect that he did not know anything about those items. Indeed, he stated that after Brown was arrested, Brown's associate (the one that had the luggage containing marijuana) returned to 3545 Stanton and informed him of Brown's arrest. Further, Isaac stated that he believed Brown and his associate had flown to California to pick up marijuana. Additionally, mail matter was located in the residence with defendant's name on it.



**ARGUMENT**

**I.     The Defendant Should Be Detained Pending Trial Because He Poses a Danger to the Community and Risk of Flight**

In light of the nature and circumstances of the offenses charged, the weight of the evidence against the defendant, the defendant's criminal history and characteristics, and the dangers to the community posed by the defendant's release, the defendant cannot overcome the presumption that he is a danger to the community and a risk of nonappearance. To the contrary, these factors establish that the presumption is correct.

**A.     The nature and circumstances of the offense**

The nature and circumstances of the charged offenses weigh in favor of detention. The grand jury found probable cause to believe that the defendant engaged in a conspiracy to distribute more than 400 grams of fentanyl, dating back to January 2021. At this point in the opioid epidemic, it is common knowledge that fentanyl kills. According to the DEA, "Fentanyl is a Schedule II controlled substance that is similar to morphine but about 100 times more potent. . . . Because of its potency and low cost, drug dealers have been mixing fentanyl with other drugs including heroin,

12

methamphetamine, and cocaine, increasing the likelihood of a fatal interaction. . . . Two milligrams of fentanyl can be lethal depending on a person's body size, tolerance and past usage."[2] According to the CDC, overdose deaths in the United States continue to rise, with more than 80 percent of such deaths attributed to synthetic opioids, primarily fentanyl:[3] In 2021, the United States set a record high, with drug overdose deaths toppling 100,000 and fentanyl causing nearly two-thirds of these deaths.[4] According to Howard University Hospital, the District has close to 400 opioid related deaths per year – contributing to the third highest opioid mortality rate in the country with 34.7 deaths per 100,000 persons compared to the national average of 14.6 deaths.

Here, the defendant was dealing fentanyl, which is made worse by the fact that it was disguised and passed off as legitimate oxycodone.  Further, the Defendant's text messages suggest that he knew the pills he was receiving and dealing were not legitimate, and yet he continued to acquire and distribute these dangerous substances to the community.

Defendant argues that the government does not have evidence of him distributing fentanyl, and that it "never recovered a single gram of fentanyl from Mr. Brown's person."  First of all, the quantities that the defendant acquired, as indicated by the above-mentioned text and Instagram messages, are plainly not a quantity for personal use.  Indeed, Brown's message about the pills being different colors indicates his intent to distribute because if they were just for personal use why would he care what colors the pills are?  Secondly, while it is technically true that there is no recovery of fentanyl from the defendant's person, this ignores the pills from 3545 Stanton which are attributable to the defendant and all the messages and texts about the defendant acquiring pills

---

[2] https://www.dea.gov/resources/facts-about-fentanyl
[3] https://www.cfr.org/in-brief/us-fentanyl-crisis-what-know
[4] https://www.cnn.com/2021/11/17/health/drug-overdose-deaths-record-high/index.html

and the actual photos of pills in his possession. A conspiracy does not require the government to prove a quantity of narcotics were physically possessed by the defendant.

The additional evidence the government has acquired to date also weighs in favor of detention. Many pills and marijuana were found at 3545 Stanton, and given that Isaac disclaimed their ownership, these are attributable to Brown, especially given that his associate was found to have flown back with an incredible 27 pounds of marijuana. While defense argues that this marijuana was not found on the defendant, it is clear from the backpack that he was carrying, which contained mylar packaging, that the packaging could be used for marijuana storage. In other words, Brown participated in a joint endeavor to traffic 27 pounds of marijuana from California and into the D.C. area. In any case, while marijuana is a different drug than fentanyl, the modus operandi is the same, which is the defendant is flying out to California and retrieving narcotics. This factor weighs in favor of detention.

### B. The weight of the evidence against the Defendant

The weight of the evidence against the defendant is extremely strong. As laid out in the factual background, communications clearly show him trafficking in fentanyl. The fact that Brown's vehicle came back with positive hits from the K9 drug dog, his associate was stopped with narcotics, and numerous pills were found in 3545 Stanton where Brown frequented, this factor weighs in favor of detention.

### C. The history and characteristics of the Defendants

The defendant appears to have one prior conviction. Nonetheless, the conspiracy charged in this case spans over two years, and the Defendant's apparently ongoing conduct weighs in favor of detention.

### D. The nature and seriousness of the danger to any person or the community posed by the person's release

The fourth factor—the nature and seriousness of the danger to any person or the community posed by the person's release—also weighs in favor of detention. The defendant's release poses a physical danger to the community. As previously stated, fentanyl is now the leading cause of overdose deaths in the United States, which hit a record high in 2021. Here, the defendant is charged with distributing fentanyl. Accordingly, his release would pose a serious danger to the community.

## CONCLUSION

For the reasons noted above, the government respectfully submits that clear and convincing evidence establishes that there are no conditions or combinations of conditions that will reasonably assure the safety of any other person and the community. Accordingly, the government respectfully requests that the Court grant the government's motion to detain the defendant pending trial in this case.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar Number 481052

 /s/ Andy T. Wang
ANDY T. WANG
Assistant United States Attorney
601 D Street, N.W.
Washington, D.C. 20530
D.C. Bar No. 1034325
Andy.wang@usdoj.gov
202-870-4940