UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MARCUS ORLANDO BROWN,<br><br>Defendant. | Criminal Action No. 23-73-10 (CKK) |

MEMORANDUM OPINION
(October 25, 2023)

Defendant Marcus Orlando Brown ("Defendant") charged by indictment with conspiring to traffic, with others, thousands of counterfeit pills of fentanyl. Defendant has appealed Magistrate Judge Robin Meriweather's oral order detaining him pending trial. Because no conditions of release can assure the safety of the community or Defendant's participation in this matter, the Court **DENIES** Defendant's [107] Appeal of Order of Detention.

I.   BACKGROUND

The documentary evidence provided by the Government thus far demonstrates a long-term relationship between Defendant, apparently a drug dealer here in the District of Columbia, and co-Defendant Hector Valdez ("Valdez") a fentanyl distributor in Los Angeles, California. In June 2022, Defendant attempted to negotiate with Valdez via text wholesale prices for substantial amounts of fake prescription pain pills. ECF No. 111 at 6. Additional text messages between Defendant and Valdez demonstrate the wholesale relationship between the two. First instance, on January 13, 2023, Valdez agreed to sell Defendant 2,000 pills of fentanyl at 43 cents per pill. *Id.* at 4. When Valdez provided miscolored pills that Defendant's customers would have understood were fake, Defendant insisted upon a refund. *Id.* at 5.

As the Court explained in its opinion and order mandating Defendant Max Carias Torres'

1

pretrial detention, the Government's material thus far demonstrates that Valdez distributed a large amount of fentanyl. *United States v. Nava*, Crim. A. Nos. 23-73-4, 23-73-6 (CKK), 2023 WL 315897, at *2 (D.D.C. Apr. 28, 2023). A search of his residence in Los Angeles, for example, uncovered approximately 4.5 kilograms of pills partially laced with fentanyl and 0.5 kilograms of powdered fentanyl. *Id.* According to the Drug Enforcement Agency, approximately two milligrams of fentanyl can constitute a lethal dose. DEA, "Facts About Fentanyl" *available at* https://www.dea.gov/resources/facts-about-fentanyl (last accessed October 25, 23 11:01 AM ET). Therefore, the Government alleges that the search uncovered approximately 250,000 lethal doses of fentanyl as to the powdered fentanyl alone.

## II. DISCUSSION

The Court reviews *de novo* Judge Meriweather's detention order and is "free to use in its analysis any evidence or reasons relied on by [Judge Meriweather], but it may also hear additional evidence and rely on its own reasons." *Sheffield*, 799 F. Supp. 2d at 20 (quoting *United States v. Hanson*, 613 F. Supp. 2d 85, 88 (D.D.C. 2009)). The question for the Court is whether any "condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). "In common parlance, the relevant inquiry is whether the defendant is a 'flight risk' or a 'danger to the community.'" *United States v. Vasquez-Benitez*, 919 F.3d 546, 550 (D.C. Cir. 2019).

Although the Bail Reform Act permits pretrial detention in only "carefully defined circumstances[,]" *United States v. Simpkins*, 826 F.2d 94, 95–96 (D.C. Cir. 1987), a rebuttable presumption of detention applies in cases such as this charging serious violations of the Controlled Substances Act, *see* 18 U.S.C. § 3142(e)(3)(A). Nevertheless, the Bail Reform Act's familiar four-factor test governs the inquiry: (1) the nature and circumstances of the offense charged; (2) the

weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g).

"To justify detention on the basis of dangerousness, the government must prove by 'clear and convincing evidence' that 'no condition or combination of conditions will reasonably assure the safety of any other person and the community.'" *United States v. Munchel*, 991 F.3d 1273, 1279–80 (D.C. Cir. 2021) (quoting 18 U.S.C. § 3142(f)). That standard requires the Government to establish that the defendant "poses a concrete, prospective threat to public safety" that cannot be sufficiently mitigated by release conditions. To rebut the presumption of detention here, Defendant must "offer some credible evidence" that they will not endanger the community or flee if released. *United States v. Cherry*, 221 F. Supp. 3d 26, 32 (D.D.C. 2016).

### A.  Nature and Circumstances of the Offense Charged

To reiterate, in this case, a rebuttable presumption of detention applies, because Defendants have been charged by indictment with serious violations of the Controlled Substances Act. *See* 18 U.S.C. § 3142(e)(3)(A); *United States v. Brown*, 538 F. Supp. 3d 154, 165 (D.D.C. 2021). Even the possession with intent to distribute "9.11 grams of fentanyl and .89 grams of powdered cocaine" triggers such a presumption. *Brown*, 538 F. Supp. 3d at 165-66. Here, the Government has presented convincing evidence that Defendant conspired to traffic and did in fact traffic in *hundreds* of grams of fentanyl, and joined a conspiracy that trafficked *hundreds of thousands* of grams of fentanyl. *See Nava*, 2023 WL 315897 at *4.

"Moreover, this is not the case of an individual seller working alone." *Brown*, 538 F. Supp. 3d at 167. The Government alleges not just a conspiracy among the Defendants in this action, but distribution from one coast of the United States to the other. Therefore, Defendant's "alleged

participation in the conspiracy charged thus strongly suggests that, if released, he would have the means to purchase and distribute narcotics and thereby endanger the D.C. community." *See id.* Therefore, this first factor weighs in favor of detention

### B. Weight of the Evidence

The weight of the evidence against Defendant also favors continued pretrial detention. Law enforcement recovered messages and images from Defendant reflecting that Defendant dealt in large amounts quantities of counterfeit opioids. The weight of this evidence is strong. *See Brown*, 538 F. Supp. 3d at 168-69. More broadly, because Defendant documented himself trafficking in large amounts of illicit drugs, this factor weighs in favor of detention. *See United States v. Brockhoff*, 590 F. Supp. 3d 295, 304 (D.D.C. 2022).

### C. History and Characteristics of the Defendant

Under the third section 3142(g) factor, the Court must consider a defendant's "history and characteristics," including his "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history related to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings." 18 U.S.C. § 3142(g)(3).

To be sure, Defendant's lack of a serious criminal record weighs against pretrial detention. *See Brockhoff*, 590 F. Supp. 3d at 305. Nevertheless, the Pretrial Services Agency for the District of Columbia represents that there is no custodian that could adequately supervise Defendant while on release. ECF No. 120 at 1. Even were Defendant to have sufficiently strong family and community ties, those facts would not satisfy his burden to demonstrate lack of danger or risk of flight if released. Therefore, this factor also weighs in favor of detention.

### D. The Nature and Seriousness of the Danger Posed by Defendant's Release

The final factor that the Court must consider is "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(4). Conspiring to distribute fentanyl presumptively renders a defendant a serious danger to the community. *See Brown*, 538 F. Supp. 3d at 170; *cf. also United States v. Bethea*, 763 F. Supp. 2d 50, 54 (D.D.C. 2011) (narcotics trafficking generally). Particularly so here given the vast amounts of drugs at issue. Moreover, Defendant faces a mandatory minimum sentence of ten years, *see* 21 U.S.C. § 481(b)(1)(A)(vi), posing a serious risk of flight. And the Government alleges that Defendant joined a conspiracy with other Defendants who have substantial ties to Mexico. *See Nava*, 2023 WL 315897 at *4. More generally, "the lethality of fentanyl and scourge of . . . opioids on this community [and communities around the country] further demonstrate the serious danger Defendant's release could pose." *United States v. Bolivar*, 455 F. Supp. 3d 1165, 1171 (D.N.M. 2020). Therefore, this factor also weighs in favor of detention.

### III. CONCLUSION

On the whole, the record establishes, by clear and convincing evidence, that no condition or combination of conditions can be imposed that would reasonably assure the safety of the community if Defendant were released pending trial. 18 U.S.C. § 3142(e)(1). As such, the Court **DENIES** Defendant's [107] Appeal of Order of Detention. An appropriate order accompanies this memorandum opinion.

**Dated:** October 25, 2023

                                                                              /s/
                                              COLLEEN KOLLAR-KOTELLY
                                              United States District Judge